O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEXON AMERICA INC., a Delaware Corporation,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>GURVINDER KUMAR, et al.,<br><br>　　　　　　　Defendants. | Case No. 2:11-cv-06991-ODW(PJWx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT [41]** |

## I.　INTRODUCTION

Currently before the Court is Plaintiff Nexon America Inc.'s March 22, 2012 Motion for Default Judgment against Defendants Gurvinder Kumar and Jessica Kaplan (collectively "Defendants"). (Dkt. No. 41.) Having carefully considered the papers filed in support of the instant Motion, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.

## II.　FACTUAL BACKGROUND

This action arises out of Defendants' alleged wrongful appropriation of Plaintiff's intellectual property for use in Defendants' for-profit venture "UMaple." Nexon is the copyright owner of the "massively multiplayer" online role-playing

game MapleStory, in which potentially thousands of users simultaneously interact with each other and explore the fictional "Maple World."  (First Amended Complaint ¶¶ 1, 2.)  MapleStory has 6 million registered players in North America and 92 million registered players worldwide.  (FAC ¶ 2.)  While MapleStory players may register for and play MapleStory free of charge, Nexon generates revenue from its copyright by allowing players to purchase "virtual goods" from Nexon's "Cash Shop" using virtual currency known as "NX Cash," which players may purchse using actual currency.  (FAC ¶ 19.)

To play MapleStory, registered players must download and install the MapleStory "client" on their computers.  (FAC ¶ 20.)  The MapleStory client contains an executable ".exe" file used to launch the MapleStory game program, as well as multiple files containing individual elements of the MapleStory game.  (*Id.*)  Once the MapleStory client has been installed, players must connect to Nexon's MapleStory Server online to play the game.  (*Id.*)  Nexon's MapleStory Server provides players access to the copyrighted MapleStory gaming environment and connects MapleStory players with each other.  (*Id.*)  When operated as Nexon intended, MapleStory cannot be played without both the MapleStory client and an active online connection to the MapleStory Server.  (*Id.*)  To prevent unauthorized access to, exploitation and modification of, and profit from MapleStory without its consent, Nexon has implemented a number of access-control security measures to control unauthorized access to the copyrighted elements in the game client.  (FAC ¶ 30.)

Defendants are the creators of the for-profit venture "UMaple."  UMaple is a network of servers, websites, and related products and services that enables users to copy, access, and play MapleStory without Nexon's consent.  (FAC ¶ 3.)  To create the UMaple Network, Defendants allegedly copied MapleStory, altered aspects of the game for use on the UMaple servers, and distributed the adapted version to others.  (*Id.*)  Defendants induced members of the public to download and copy Defendants' version of MapleStory in violation of Nexon's copyrights and Terms of Service.  (*Id.*)

Plaintiffs contend that in doing so, Defendants also circumvented Nexon's access-control security measures and trafficked in devices intended to circumvent those measures in violation of the Digital Millennium Copyright Act ("DMCA"). (*Id.*)

To play MapleStory on Defendants' UMaple servers, a user must register for an account with UMaple and obtain a copy of Defendants' modified version of the MapleStory client designed for use on the UMaple servers. (FAC ¶ 43.) Plaintiff's discovery revealed that at least 17,938 people have created UMaple accounts. (Mot. 8.) Plaintiff avers that each of these people necessarily downloaded one or more of Defendants' modified MapleStore clients for use in connecting to the UMaple Servers and playing MapleStory without Nexon's authorization. (*Id.*)

According to Plaintiffs, the UMaple servers are designed to enable game play entirely separate from the authorized MapleStory environment, thereby depriving Nexon of profits it otherwise may have earned through players' purchase of virtual goods from the MapleStory Cash Shop. Defendants allegedly profit from their infringement of Nexon's MapleStory copyrights by encouraging their UMaple users to make "donations," for which UMaple users receive certain in-game enhancements in Defendants' version of MapleStory. (FAC ¶ 49; Mot. 19.)

As a result of these infringements, Plaintiff filed a Complaint against Pardeep Kumar on August 23, 2011. (Dkt. No. 1.) Subsequent discovery revealed that Jessica Kaplan and Pardeep Kumar's neighbor, Gurvinder Kumar, were the proper defendants in this action. (Mot. 10.) Accordingly, on December 22, 2011, Plaintiff filed a notice of dismissal as to Pardeep Kumar and an Amended Complaint naming Gurvinder Kumar and Kaplan as defendants. (Dkt. Nos. 24, 26.) Plaintiff's Amended Complaint asserted seven claims against Defendants for (1) copyright infringement; (2) inducement to infringe copyrights; (3) contributory copyright infringement; (4) vicarious copyright infringement; (5) violation of the DMCA; (6) breach of contract; and (7) intentional interference with contractual relations.

/ / /

On February 7, 2012, the Clerk of the Court entered default against Kumar and Kaplan. (Dkt. No. 38.) Plaintiff now moves for default judgment against both Defendants.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the Clerk's entry of default under Rule 55(a). Federal Rule of Civil Procedure 55(b) and Local Rule 55-1 require that applications for default judgment set forth (1) when and against what party the default was entered; (2) the identification of the pleadings to which the default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Service Member's Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2).

The district court is given discretion to decide whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint—except those pertaining to damages—are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F. 2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Group*, 559 F. 2d 557, 560 (9th Cir. 1977)). However, in exercising its discretion regarding entry of default, a court must consider several factors, including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

/ / /

/ / /

## IV. DISCUSSION

Plaintiff's Motion for Default Judgment seeks judgment as to damages on each claim asserted in Plaintiff's Complaint. Plaintiff seeks judgment comprised of $68,764.23 in disgorged profits, $44,845,000.00 in statutory damages for Defendants' violations of the DMCA, permanent injunctive relief against future infringement, attorney's fees of at least $76,727.28, and costs in the amount of $3,711.43. The Court considers each in turn.

**A.  Liability**

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Federal Rule of Civil Procedure 55(a) and Local Rule 55-1. Specifically, Plaintiff established that (1) the clerk entered default against Defendant on February 7, 2012[1]; (2) the default is based on Defendants' failure to respond to Plaintiff's December 22, 2012 Amended Complaint; (3) Defendants are neither infants nor incompetent persons; (4) Defendants are neither members of the U.S. Military nor otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940; and (5) Plaintiff served Defendants with notice of its application for default judgment by mailing a copy of the Motion and all supporting documents to Defendants' home addresses.

The Court also finds that consideration of the *Eitel* factors weighs in favor of granting the motion. *See Eitel*, 782 F.2d at 1471–72. Specifically, Plaintiff would suffer prejudice if default judgment is not entered because Plaintiff "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." *Electra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Further, because the "well-pled allegations in the complaint regarding liability are deemed true" upon entry of default, *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002), Plaintiff has established the merits of its

---

[1] Plaintiff's Motion indicates that the Clerk entered Defendants' default on the Amended Complaint on February 20, 2012 (Mot. 12), and the attached declaration of Plaintiff's counsel Marc E. Mayer indicates that the Clerk entered defaults against Defendants on February 6, 2012. The Court notes that the Clerk actually entered default against Defendants on February 7, 2012.

claims and the sufficiency of its Amended Complaint. While the amount at stake in this action is quite large, the bulk of any damages awardable is governed by statutorily mandated sums. *See* 17 U.S.C. § 1203(b)(3)(A) (establishing a statutory minimum of $200.00 and a statutory maximum of $2,500.00 for violations of the DMCA where plaintiff elects statutory damages in lieu of actual damages). Finally, the Court finds that Defendants' failure to answer or file a responsive pleading was not the result of excusable neglect because Defendants failed to respond despite repeated notice of this action and their infringing conduct. (Mot. 17–18.) Accordingly, Plaintiff's Motion for Default Judgment is **GRANTED** as to liability.

**B.     Damages**

Plaintiff seeks disgorgement of Defendants' profits under 17 U.S.C. § 504(b) for Defendants' acts of copyright infringement. Plaintiff also seeks an award of statutory damages under 17 U.S.C. § 1203(c)(3)(A) for Defendants' violations of the DMCA.

*1.     Disgorgement of Profits Under 17 U.S.C. § 504(b)*

The Copyright Act permits a copyright owner to claim "any profits from the infringer that are *attributable to the infringement*." 17 U.S.C. § 504(b) (emphasis added). "[I]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* Thus, "once liability has been shown, § 504(b) creates an initial presumption that the infringer's 'profits . . . attributable to the infringement' are equal to its gross revenue." *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) (quoting *Bonner v. Dawson,* 404 F.3d 290, 294 (4th Cir. 2005)).

"In meeting its initial burden, however, a copyright holder must show more than the infringer's total gross revenue from *all* of its profit streams . . . . Rather, 'gross revenue' refers only to revenue *reasonably related* to the infringement." *Id.*

(omission in original) (quoting *Bonner*, 404 F.3d at 294). Courts will deny recovery to the copyright owner "[w]hen an infringer's profits are only remotely and speculatively attributable to infringement." *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). Accordingly, an award of an infringer's profits may be properly denied in cases where, despite the existence of a *conceivable* link between the infringement and the infringer's gross profits, "the plaintiff fail[s] to offer anything more than mere speculation as to the existence of a causal connection between the infringement and the claimed revenues." *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003).

Plaintiff seeks $68,764.23 in profits that Defendant Kumar purportedly received in connection with UMaple's operation. (Mot. 19.) Plaintiff supports its request with the Declaration of Marc E. Mayer. (Dkt. No. 41-1.) Attached to Mayer's Declaration are exhibits that Mayer testifies reflect donation payments made by UMaple users to Kumar via third-party payment processors AlertPay Inc. ($4,433.00); PayPal, Inc. ($16,518.82); and Plimus ($46,870.14). (Mayer Decl. ¶¶ 12, 13, 17 & Exs. 4, 5, 8, 9.) Mayer also testifies that poritons of Kumar's personal banking records from JP Morgan Chase also reflect payments of $942.27 from Google that were either earmarked "UMaple" or were "apparently for Google advertising placed on UMaple." (Mayer Decl. ¶ 17 & Ex. 8.)

Plaintiff only satisfactorily proves that $398.98 in profits from Google was reasonably related to Kumar's infringement. (*See* Ex. 8, at 323–25 (reflecting deposits made on 4/19/10 ($0.19), 5/03/10 ($33.34), 5/06/10 ($116.49), and 5/10/10 ($230.24, $18.72)).) The remaining $543.29 in Google profits were deposited by "Google Adsense" and tagged only as "Revenue Sh." (Mayer Decl. Ex. 8.) However, Plaintiff has not established that Kumar utilized Google ad services soley for UMaple. Plaintiff's assertion that deposits made by Google Adsense were "apparently for Google advertising placed on UMaple" therefore lacks any foundation.

Plaintiff similarly fails to establish with reasonable certainty that payments Kumar received via third-party payment processors AlertPay, PayPal, and Plimus are attributable to Kumar's infringement of Plaintiff's copyright. To prove payments from AlertPay and PayPal, Plaintiff provides relevant portions of subpoenaed transaction logs "*related to* known e-mail addresses and aliases associated with the UMaple Network, and related accounts." (Mayer Decl. ¶¶ 12–13 (emphasis added).) However, Plaintiff fails to allege—much less establish—that the email accounts Kumar used to create the relevant AlertPay and PayPal accounts were used *solely* in conjunction with UMaple and not other legal forms of electronic commerce. Instead, Plaintiff merely submitted 252 raw pages of documents obtained through discovery without so much as a summary of the information contained in those documents or an explanation to the Court how any of the line items contained therein directly relate to Kumar's UMaple activities. Based on this morass alone, Plaintiff would appear to have the Court simply infer that because Kumar set up accounts with AlertPay and PayPal using an email address he also used in conjunction with UMaple, any payment received through these AlertPay and PayPal accounts must have derived exclusively from Kumar's unlawful UMaple activities. The Court is unwilling to draw this inference.

Plaintiff's proof of payments processed through Plimus suffers from a similar shortcoming. While Kumar's bank records reflect that Plimus processed $46,870.14 in deposits to Kumar's account (Mayer Decl. ¶ 17 & Ex. 8), Plaintiff does not contend that Kumar utilized Plimus's payment-processing services *solely* for donations made to UMaple. Given the myriad electronic commerce transactions allowing for—even encouraging—payment processing through trusted third-party processors like PayPal, AlertPay, and Plimus, the Court could just as easily infer that the bulk of payments Kumar received through these services were earned through legal means of electronic commerce.

Because Plaintiff fails to establish that the payments Kumar received from PayPal, AlertPay, and Plimus are reasonably attributable solely to Kumar's infringing activities and not legal forms of electronic commerce, the Court is unwilling to disgorge from Kumar the full extent of "profits" Plaintiff requests. The Court therefore **GRANTS** Plaintiff's request for disgorgement of Kumar's profits only as to the **$398.98** from Google that Plaintiff has successfully proven.

  *2. Statutory Damages Under 17 U.S.C. § 1203(c)(3)(A)*

Plaintiff contends that Defendants violated the DMCA, 17 U.S.C. § 1201, by creating and distributing computer files designed to circumvent and bypass access controls put in place by Nexon. Plaintiff seeks $44,845,000.00 in statutory damages under the DMCA for these violations.

In lieu of actual damages and profits, a prevailing plaintiff under the DMCA "may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 [n]or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Cf. Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (applying 17 U.S.C. § 504(c)(1)).

Plaintiff urges that it is "entitled to the maximum statutory damages of $44,845,000." (Mot. 20–21.) Plaintiff calculates this figure by multiplying $2,500.00 by 17,938, the total number of UMaple Network members revealed through Plaintiff's limited discovery. Plaintiff argues that each UMaple member necessarily downloaded a so-called "UMaple Launcher" designed to circumvent Nexon's MapleStory security measures, as the only reason one would become a UMaple member is to obtain a UMaple Launcher and play Defendants' infringing version of MapleStory on the UMaple servers instead of the MapleStory servers. Thus, Plaintiff asserts that the total number of UMaple users—17,938—accurately reflects the minimum number of

DMCA violations Defendants committed. Plaintiff further contends that the maximum DMCA statutory damages amount is merited in this case because Defendants' infringement was willful.

Plaintiff's Motion and accompanying declarations clearly establish that Defendants' infringement was willful. Further, the Court does not quibble with Plaintiff's premise that the number of UMaple members is a reasonable approximation of the minimum number of DMCA violations Defendants committed, especially in light of "the potential difficulty Plaintiff faces in calculating the number of 'acts of circumvention' performed on Defendant's servers." *Blizzard Entm't, Inc. v. Reeves*, No. CV 09-7621 SVW (AJWx), 2010 WL 4054095, at *3; *see also id.* ("[T]he Court concludes that each of the 427,393 community members downloaded, accessed, or otherwise used anti-circumvention software, services or products.") The Court does grapple, however, with Plaintiff's assertion that it is "entitled" to the *maximum* statutory award available under the DMCA.

As a threshold matter, the Court notes that the cases Plaintiff cites for its contention that it is entitled to the *maximum* statutory damages award applied the statutory maximum awards allowable under 17 U.S.C. *§ 504(c)* and *§ 1117(c)*, not § 1203(c) of the DMCA. *See Perfect 10, Inc. v. Talisman Comm'ns Inc.*, No. CV99-10450 RAP, 2000 WL 364813, at *4 (C.D. Cal. March 27, 2000); *Rodgers v. Anderson*, No. 04CIV1149 RJHAJP, 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005); *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1072 (C.D. Cal. 2004). In addition, each of the three cases Plaintiff cites for the proposition that the *maximum* $44,845,000.00 award Plaintiff seeks is "consistent with statutory damages awards in other DMCA cases" applied the *minimum* statutory damages award available under the DMCA—$200.00. *EchoStar Satellite LLC v. ViewTech, Inc.*, No. 07cv1273 BEN (WVG), 2011 WL 1522409, at *4 (S.D. Cal. Apr. 20, 2011); *Dish Network L.L.C. v. Ward*, No. 8:08-cv-590-T-30TBM, 2010 U.S. Dist. LEXIS 1422090, at *20 (S.D. Fla. Jan. 8, 2010); *Reeves*, 2010 WL405095, at *3. While these

observations do not bear directly on the amount of damages to which Plaintiff is entitled as a result of Defendants' default in this action, they do cause the Court to question very seriously whether Plaintiff intended to actively mislead the Court or whether these oversights were merely the result of poor legal research.

Nevertheless, the Court is aware of several cases where district courts have in fact awarded the maximum statutory damages for violations of the DMCA upon default judgment. *E.g.*, *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, --- F. Supp. 2d ----, 2012 WL 539945, at *12 (S.D. Fla. 2012) (awarding $2,500,000.00); *Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005) (awarding $6,018,700.00 in statutory DMCA damages, only $387,500.00 of which was the result of the maximum statutory multiplier); *Autodesk, Inc. v. Flores*, No. 10-CV-01917-LHK, 2011 WL 337836, at *9 (N.D. Cal. Jan. 31, 2011) (slip copy) (awarding $2,500.00 for a single DMCA violation). Close review of these cases reveals that courts tend to award the DMCA statutory maximum only where doing so would not create a significant windfall for the Plaintiff. And while Plaintiff cites several DMCA cases awarding statutory damages awards in the steep millions that arguably inure excessively to those plaintiffs' benefit, each of those cases applied the *minimum* statutory award those courts were permitted to apply. *See EchoStar*, 2011 WL 1522409, at *4 ($214,898,600.00); *Ward*, 2010 U.S. Dist. LEXIS 1422090, at *20 ($51,148,200.00); *Reeves*, 2010 WL405095, at *3 (awarding $5,478,600.00 in statutory damages and noting that "[t]o the extent that this figure appears unreasonably large, Congress has mandated this approach and the Court is unable to deviate from it").

The Supreme Court has stated that "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1990). However, while a plaintiff in a copyright action is entitled to damages that

will serve as a deterrent, the plaintiff is not entitled to a windfall. *Autodesk*, 2011 WL 337836, at *8; *see Beachbody, LLC v. Johannes*, No. 11-1148 PSG (RZx), 2011 WL 3565226, at *3 (C.D. Cal. Aug. 12, 2011) (quoting *Herman Miller, Inc. v. Alphaville Design, Inc.*, No. C 08-03437, 2009 WL 3429739, at *9 (N.D. Cal. Oct. 22, 2009). Thus, in awarding statutory damages, federal district courts in California have considered whether the amount of a requested statutory damages award bears a "plausible relationship" to the plaintiff's actual damages. *E.g.*, *Autodesk*, 2011 WL 337836, at *8; *Beachbody*, 2011 WL 3565226, at *3.

The Court would deem even the minimum statutory amount awardable under the DMCA in this case to be a significant windfall to Plaintiff far in excess of any amount necessary to deter future infringing conduct. Further, the minimum award here likely bears little plausible relationship to Plaintiff's actual damages. Nevertheless, the Court is powerless the deviate from the DMCA's statutory minimum and therefore awards Plaintiff **$3,587,600.00** (17,938 x $200.00) in statutory DMCA damages.

## C. Injunctive Relief

Plaintiff seeks permanent injunctive relief to prevent Defendants' further infringement of Plaintiff's copyright. The Copyright Act and the DMCA[2] authorize courts to grant permanent injunctions on reasonable terms to prevent future violations. 17 U.S.C. §§ 502(a), 1203(b)(1). The Court concludes that Plaintiff has demonstrated facts supporting the grant of a permanent injunction under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as

---

[2] Plaintiff's Motion only explicitly seeks injunctive relief under the Copyright Act, 17 U.S.C. § 502(a). However, Plaintiff's proposed injunction, as set forth in Plaintiff's Proposed Order, would enjoin Defendants' future violations of Plaintiff's copyright under both the Copyright Act and the DMCA. Because Plaintiff has established liability under the Copyright Act and the DMCA, and because the Copyright Act, 17 U.S.C. § 502(a), and the DMCA, 17 U.S.C. § 1203(b)(1), contain nearly identical provisions empowering courts to grant injunctive relief, the Court construes Plaintiff's Motion as seeking injunctive relief under both statutory schemes.

monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."). In particular, the Court finds that Plaintiff will suffer irreparable injury absent an injunction "because an award of monetary damages against Defendants likely will not prevent or deter the adverse, long-term effect on Nexon's ability to exploit its copyrighted works." (Mot. 22.) This consideration is particularly salient in light of the inherent difficulty in precisely calculating the number of infringements Defendants committed or induced. Further, Plaintiff's proposed injunction is narrowly tailored such that it prohibits only future infringing conduct by Defendants and those under their control or direction, which imposes little—if any—hardship on Defendants. The Court therefore **GRANTS** Plaintiff's request for a permanent injunction.

### D. Attorney's Fees and Costs

Finally, Plaintiff seeks an award of its reasonable attorney's fees and costs under 17 U.S.C. § 505. Section 505 grants the Court discretion to allow recovery of Plaintiff's full costs and to award reasonable attorney's fees as part of Plaintiff's costs. Local Rule 55-3 further provides that where a statute provides for the recovery of reasonable attorney's fees, "those fees *shall* be calculated according to" the schedule provided under the Rule. C.D. Cal. L.R. 55-3 (emphasis added). This schedule establishes than a "reasonable" attorney's fee where the judgment is over $100,000.00 is equal to $5,600.00 plus 2% of the amount over $100,000.00.

/ / /
/ / /
/ / /
/ / /

Calculated pursuant to Local Rule 55-3, Plaintiff's "reasonable" attorney's fee in this case would be $77,359.98.[3] The Court deems this amount patently unreasonable in light of the amount of substantive work this case demanded. This case was filed on August 24, 2011, and thus is barely eight months old. Because Plaintiffs have prevailed in this case upon entry of default, Plaintiff's counsel necessarily has expended little substantive effort on the prosecution of this action. Indeed, the docket reveals that the substantive filings in this case consist of: the Complaint (Dkt. No. 1), several requests for entry of default (Dkt. Nos. 9, 12, 31, 32, 36, 37), an ex parte application for leave to take immediate discovery regarding service and identity of Doe defendants (Dkt. No. 16), an ex parte application for extension of time to file a motion for entry of default judgment (Dkt. No. 17), an ex parte application for discovery regarding additional limited third-party discovery (Dkt. No. 22), a First Amended Complaint (Dkt. No 26), limited third-party discovery, and the instant Motion for Default Judgment (Dkt. No. 41).

While Local Rule 55-3 appears to establish a mandatory calculation to be applied in cases where the "applicable statute provides for the recovery of reasonable attorneys' fees," the Court finds it significant that § 505 gives courts discretion whether to award costs to the prevailing party at all. 17 U.S.C. § 505 ("[T]he court *in its discretion may* allow the recovery of full costs by or against any party . . . . [T]he court *may* also award a reasonable attorney's fee to the prevailing party as part of the costs." (emphasis added)). This grant of discretion contrasts with other statutory schemes that grant courts no discretion in awarding attorney's fees and costs to prevailing parties. *E.g.*, The Communications Act of 1934 § 605, 47 U.S.C. § 605(e)(3)(B)(iii) ("The court *shall* direct the recovery of costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." (emphasis added)). In

---

[3] Because the Court grants Plaintiff $3,587,998.98 (composed of disgorged profits of $398.98 and statutory damages in the amount of $3,587,600.00), the Court arrives at $77,359.98 by adding $71,759.98 (2% of $3,587,998.98) to $5,600.00.

1 light of § 505's grant of judicial discretion, the Court finds that a strict application of
2 Local Rule 55-3's "reasonable attorneys' fees" schedule would stand contrary to the
3 clear language of § 505. Accordingly, the Court hereby **ORDERS** the parties to
4 submit to the Court, **within thirty days of the date of this Order**, an affidavit
5 documenting in detail the fees and costs actually incurred in prosecuting this action.
6 The affidavit must include the hourly rate charged by each attorney and staff member
7 who performed services in this case.

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion is **GRANTED in part and DENIED in part**. Plaintiff is **ORDERED** to submit an affidavit documenting the attorney's fees and costs expended in prosecuting this action. A final judgment will issue upon final determination of the appropriate amount of reasonable attorney's fees and costs to award in this case.

**IT IS SO ORDERED.**

April 3, 2012

_____
**HON. OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE**